CASE NO. 13-1774

IN THE
# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EMILY KROLL
*Plaintiff-Appellant*

v.

WHITE LAKE AMBULANCE AUTHORITY
*Defendant-Appellee,*

On Appeal from the United States District Court
for the Western District of Michigan
Southern Division

BRIEF OF APPELLANT

Oral Argument Requested

Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503-1423
(616) 458-6814
*Counsel for Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Cir. R. 26.1, Complainant-Appellant, Emily C. Kroll, makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?

**No.**

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

**None affiliated with Ms. Kroll.**


Date: July 31, 2013                    _/s/ Bradley K. Glazier_
                                       Bradley K. Glazier

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT . . . . . . . . . . . . . . . . . . vii

APPELLANT'S JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    The Personnel Policies of WLAA . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    The Performance of Emily Kroll . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.    WLAA's Practice of Mandating Counseling
       for Its Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.    WLAA's Ultimatum to Ms. Kroll - Supervised
       Counseling or Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    F.    The Events of April 28, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    G.    EEOC Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    H.    The Proceedings in the Trial Court . . . . . . . . . . . . . . . . . . . . . . 12

III.  ARGUMENT  ............................................... 13

   A.   Standard of Review ...................................... 13

   B.   The Trial Court Erred in Granting WLAA's Motion
        for Summary Judgment Because there Was No Significant
        Evidence that Could Cause a Reasonable Person to Inquire
        as to Whether Kroll Was Incapable of Performing Her Job  ...... 15

        1.   The Employer Has the Burden of Proving that a
             Medical Examination was Both "Job Related" and
             "Consistent with Business Necessity."  ................. 15

        2.   To Prove that a Medical Exam is Job Related and
             Consistent with Business Necessity, an Employer
             Must Bring Forth Significant Evidence of
             Performance Deficiencies ............................ 16

        3.   The Inquiry is Fact Intensive and Generally
             Inappropriate to Resolve by a Summary
             Judgment Motion  .................................. 17

        4.   The District Court Erred by Ignoring the Absence
             of Performance Deficiencies and By Using Disputed
             Facts to Support a Conclusion that Should Have
             Been Reserved for the Jury  .......................... 18

IV.   CONCLUSION AND RELIEF SOUGHT  ......................... 25

# TABLE OF CASES, CITATIONS, AND AUTHORITIES

Page

Cases

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . 14

*Borgus v. Smithkline Beecham Corp.,*
   No. 02-CV-6472; 2004 WL 2095534,
   (W.D.N.Y., Sept. 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.,*
   329 F.3d 546 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Conroy v. New York State Dep't. of Correctional Services,*
   333 F.3d 88 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cripe v. City of San Jose,*
   261 F.3d 877 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe v. Kohn Nast & Graf,*
   866 F. Supp. 190 (E.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fredenburg v. Contra Costa County Dept. of Health Services,*
   172 F.3d 1176 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gonzalez v. Sandoval County,*
   2 F. Supp.2d 1442 (D.N.M. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Kroll v. White Lake Ambulance Authority,*
   691 F.3d 809 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii, 3, 13

*Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . 14

iv

*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Roe v. Cheyenne Mountain Conf. Resort, Inc.,*
    124 F.3d 1229 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Schaffer v. A.O. Smith Harvestore Prod. Inc.,*
    74 F.3d 722 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sullivan v. River Valley School Dist.,*
    197 F.3d 804 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22, 23

*Tice v. Centre Area Transp. Auth.,*
    247 F.3d 506 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Transp. Workers, Local 110 v. New York City Transp. Auth.,*
    2004 WL 830289 at *1, n.10 (S.D.N.Y., Apr. 13, 2004) . . . . . . . . . . . . . 18


<u>Statutes and Regulations</u>

29 C.F.R. §1630.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 C.F.R. §1630.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. §1630.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §12112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii, 3, 4, 15, 16

42 U.S.C. §12117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Court Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

Fed. R. App. P. 4(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant, Emily C. Kroll, requests oral argument. This appeal follows a previous appeal in the case. In the first appeal, this court reversed the district court's order granting the defendant employer's motion for summary judgment. *See, Kroll v. White Lake Ambulance Authority*, 691 F.3d 809 (6th Cir. 2012). Following remand, the defendant employer filed a renewed motion for summary judgment, raising another argument for summary judgment that was not addressed by the district court in its first summary judgment order. The district court granted the employer's renewed summary judgment motion and that order is the subject of this appeal.

The case involves a provision in the Americans with Disabilities Act ("ADA") that prohibits an employer from requiring an employee to undergo a medical examination "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). There is scant appellate authority interpreting this section of the ADA and oral argument will assist this court in reaching a full understanding of the underlying facts, and the claims on appeal. Accordingly, appellant believes that oral argument is appropriate and would assist the court of appeals.

## APPELLANT'S JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Michigan had jurisdiction over this case pursuant to 28 U.S.C. § 1331, federal question jurisdiction, as plaintiff's claims arose under 29 U.S.C. § 12101, *et. seq.*, the Americans with Disabilities Act of 1990.

The Sixth Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Plaintiff filed a notice of appeal on June 4, 2013, (R. 80, ID#819) from the district court's Order Granting the Defendants' Renewed Motion for Summary Judgment (R. 79, ID#818). The district court's order granting defendant's motion was entered on May 22, 2013. The order was a final order that disposed of all the claims raised by the parties. Plaintiff's appeal was filed within 30 days following entry of the final order and was timely filed under Fed. R. App. P. 4(A).

## STATEMENT OF ISSUES FOR REVIEW

1.     Where the District Court Acknowledged that the Plaintiff Performed her Job Well and Acknowledged that She was Never Disciplined and Where the Law Only Permits an Employer to Require an Employee to Undergo a Medical Examination if there "is Significant Evidence that Could Cause a Reasonable Person to Inquire as to Whether an Employee is still Capable of Performing [Her] Job," Did the District Court Err in Concluding that the Employer's Demand for a Medical Examination was Justified?

The Appellant says - Yes.

The Appellee says - No.

The District Court says - No.

2.     Did the District Court Draw Inferences from the Record Evidence in Favor of the Moving Party and Against the Non-Moving Party as Prohibited by Fed. R. Civ. P. 56 when the Court Concluded that the Employer was Entitled to Summary Judgment on an Issue Over which the Employer had the Burden of Proof?

The Appellant says - Yes.

The Appellee says - No.

The Lower Court says - No.

# I.

## STATEMENT OF THE CASE

This lawsuit asserts that defendant White Lake Ambulance Authority ("WLAA") violated the Americans With Disabilities Act ("ADA"). The ADA prohibits an employer from requiring employees to undergo a medical examination or inquiring about disabilities unless the examination or disability is shown to be job related and consistent with business necessity. *See,* 42 U.S.C. § 12112(d)(4)(A).

In a previous appeal, this court vacated the district court's order granting WLAA's summary judgment motion and remanded the case to the district court. *Kroll v. White Lake Ambulance Authority*, 691 F.3d 809 (6th Cir. 2012). At issue in the first appeal was whether psychological counseling demanded by an employer constituted a "medical examination" under the ADA. *Id.*, p. 820. This court found that it did and found that the district court failed to construe facts relating to the mandated counseling in favor of Kroll, the nonmoving party. *Id.*, p. 818, n. 11.

WLAA filed a renewed motion for summary judgment following the remand, arguing that it had a reasonable basis to require Emily Kroll to undergo counseling. WLAA principally relied upon the brief that it filed with its first summary judgment motion. Kroll argued that the proper test was whether WLAA could prove that its demand for a medical exam was "job related and consistent with business necessity."

42 U.S.C. § 12112(d)(4)(A). Kroll contended that WLAA had the burden of proof on this issue and that, at the very least, there were fact issues to be resolved by the jury in light of WLAA's acknowledgments that Kroll was considered to be good employee who had never received any discipline. Kroll also argued that WLAA had not met the standards set forth in the EEOC guidelines and case law requiring employer proof that the alleged medical condition impaired Kroll's ability to perform the essential functions of her job or posed a direct threat to herself or others.

The district court granted WLAA's renewed motion. After acknowledging that "the employer bears the burden of demonstrating job-relatedness and business necessity," (Opinion, R. 78, p. 7, ID#812), the district court resolved the issue in favor of WLAA. The district court relied upon the employer's version of the facts, including rumor and innuendo from co-employees of Kroll and, including incidents that took place outside of the workplace and that had no bearing on Kroll's ability to do her job. The court also ignored Kroll's testimony regarding the reasons she was given for the mandatory counseling. Kroll testified that her supervisor, Brian Binns, told her that the demand for counseling was not due to her job performance but "because of immoral personal behavior" relating to her "picking men up from the bar." (R. 53-4, Exhibit 14, Kroll dep, p. 174, 175, ID#523). Because the court was wrong about its legal conclusion and because the court improperly drew factual

4

inferences in favor of WLAA in order to support its conclusion, the district court erred and this court should reverse and remand this case for a trial on the merits.

## II.

## STATEMENT OF FACTS

### A.   The Parties.

Emily Kroll is a 36 year-old woman who lives in Whitehall, Michigan. Ms. Kroll worked as an emergency medical technician specialist ("EMT") for WLAA. She was employed from September 2003 until April 28, 2008. (R. 53-4, Exhibit 14, Kroll dep, p. 22, ID#519). Ms. Kroll was paid to be "on call" for various shifts and was paid a per diem for each ambulance run that she took during her on-call shifts. Ms. Kroll estimates that she was scheduled to work around 20 to 22 - 8 hour shifts every two-week pay period. (R. 53-4, Exhibit 14, Kroll dep, p. 23-24, ID#519).

WLAA provides emergency medical transportation services to the communities in the Whitehall and Montague area west of Grand Rapids, Michigan. During Emily Kroll's tenure with WLAA, the Director was Brian Binns. Jean Dresen was the Office Manager. (R. 53, Exhibit 11, Dresen dep, p. 11, ID#498). Mr. Binns reported to a Board of Directors. (R. 52-4, Exhibit 9, Binns dep, p. 25, ID#480).

5

### B.     The Personnel Policies at WLAA.

WLAA adopted a Personnel Policies and Procedure Manual that included sections on work rules and the discipline and discharge of employees. (R. 51-1, Exhibit 1, Section R, p. 5-7, ID#414-416).  The manual called for progressive discipline, "taking into account the nature of the offense, the work record of the employee and other extenuating circumstances." (*Id.,* p. 7, ID#416). The manual was distributed to employees who acknowledged receipt of the document. (R. 51-2, ID#437). The purpose of the WLAA policy manual was to notify employees about "a list of things that [they] should not be doing, and if [they] do engage in this conduct [they] will receive discipline for doing so." (R. 52-4, Exhibit 9, Binns dep, p. 34, ID#481).

### C.     The Performance of Emily Kroll.

Ms. Kroll received no discipline and did not break any of the work rules at WLAA. (R. 53, Exhibit 11, Dresen dep, p. 43, ID#502; R. 52-4, Exhibit 9, Binns dep, p. 59, 65, ID#486-487).  In fact, all of the witnesses who offered an opinion about Ms. Kroll agreed that she had good to very good skills as an EMT.  For example, Brian Binns could not recall an ambulance call where Ms. Kroll was not doing her job properly. (R. 52-4, Exhibit 9, Binns dep, p. 56, ID#485).  When asked about Ms. Kroll's performance evaluations, Mr. Binns testified as follows:

6

Q      And during the time period that Emily Kroll worked for you is it your
       recollection that when you sat down and had your verbal discussions
       regarding her performance that you always gave her a good performance
       evaluation?

A      I don't remember an annual review with her, but there were times when
       I would look at her run sheet or I would be aware of something that
       happened or somebody told me how the call went and they included
       Emily. And I would say, you know, good job. Good job, keep it up.

Q      Do you recall if you ever issued a suspension against Emily Kroll?

A      Never.

Q      Did you ever issue a written warning against Emily Kroll?

A      No.

Q      Do you recall ever giving her a verbal reprimand?

A      I might have. I can't think of an employee that didn't
       receive a verbal reprimand at one time or another.

Q      Do you recall any specific verbal reprimand that you gave
       to Emily Kroll?

A      I can't remember right now.

(R. 52-4, Exhibit 9, Binns dep, p. 58-59, ID#486).

       Jeffrey Holmstrom described Ms. Kroll's skill set as "very good" and their

working relationship as "good." (R. 53-3, Exhibit 13, Holmstrom dep, p. 4, ID#514).

Mark Terpstra described Emily Kroll as a "good EMT" who did well in taking care

of patients and following protocol. (R. 54-2, Exhibit 17, Terpstra dep, p. 38,

7

ID#541). Jodi Osborn described Ms. Kroll as "very good partner" who "could communicate well." (R. 53-5, Exhibit 15, Osborn dep, p. 9, ID#529).

On April 23, 2008, Emily Kroll received a letter from the Muskegon County Medical Control Authority, commending her for being "a really good EMT that is committed to provide the best care possible." (R. 51-3, Exhibit 3, ID#439).

**D.    WLAA's Practice of Mandating Counseling for Its Employees.**

In the mid-1980's, Brian Binns learned that one of the WLAA employees, Jeff Holmstrom, a paramedic, was involved in sexual relationships outside of marriage. (R. 52-4, Exhibit 9, Binns dep, p. 41-42, ID#482-483). Mr. Binns described Jeff Holmstrom as a "skirt chaser" who was dating "married women or women who were committed to other individuals." (*Id.,* p. 41-42, ID#482-483). Because of Mr. Holmstrom's sexual proclivities, Mr. Binns required Mr. Holmstrom to undergo psychological counseling as a condition of keeping his job at WLAA. (*Id.,* p. 40-41, ID#482).

In 1993, Mr. Binns heard that Kathie Sturgis, an EMT, was dating a married man. (R. 54, Exhibit 16, Sturgis dep, p. 13-14, ID#536-537). Mr. Binns required Ms. Sturgis to undergo psychological counseling to keep her job. (*Id.*) Although the counselor authorized Ms. Sturgis to return to work, Mr. Binns refused to rehire her. (*Id.,* p. 14, ID#537).

8

As noted in defendant's summary judgment brief, WLAA was similarly concerned that plaintiff was "involved in sexual relationships with married men." (Defendant's brief, R. 50, p. 3). Mr. Binns equated Ms. Kroll's interest in men to Mr. Holmstrom's reputation as a skirt chaser. (R. 52-4, Exhibit 9, Binns dep, p. 41, ID#482).

### E.   WLAA's Ultimatum to Ms. Kroll - Supervised Counseling or Termination.

Around April 21, 2008, Jean Dresen approached Ms. Kroll about psychological counseling. (R. 53, Exhibit 11, Dresen dep, p. 35, 39, ID#500-501). Ms. Dresen believed that Ms. Kroll could be helped by someone who could counsel her on mental health issues. (R. 53, Exhibit 11, Dresen dep, p. 37, ID#500). Ms. Dresen is not an expert in the mental health field. (*Id.*) Ms. Dresen did not speak with any health care providers regarding her opinion that Ms. Kroll needed psychological counseling. (*Id.,* p. 37, ID#500). She only spoke with Mr. Binns, who has no psychology background. (*Id.*) Nor did she talk with any psychiatrists, psychologists, or medical doctors about whether Ms. Kroll presented a direct threat to herself or others at WLAA. (*Id.*)

Ms. Dresen told the plaintiff that she would need to make her own financial arrangements for the counseling as WLAA would not pay for it. (R. 53, Exhibit 11, Dresen dep, p. 39, ID#501). Ms. Dresen also asked Ms. Kroll to sign an authorization

permitting WLAA to access her medical records. (*Id.,* p. 39-40, ID#501). Ms. Kroll did not agree to attend counseling as a condition of her employment.

### F.    The Events of April 28, 2008.

On April 28, 2008, Ms. Kroll participated in an ambulance run with Jodi Osborn, a paramedic with WLAA. During the run, Ms. Osborn called Ms. Kroll a whore who was only good for getting down on her knees. (R. 50, Exhibit F, Doc. ID 50-7, p. 12, Kroll dep, p. 167). This accusation followed the inadvertent forwarding of a text message from Emily Kroll to Jodi Osborn about whether Ms. Kroll's former boyfriend, Josh Easton, ever had sex with Jodi Osborn. (R. 50, Exhibit O, Doc. ID 50-16, p. 2).

After returning to the WLAA garage from the ambulance run, Ms. Osborn asserted that Ms. Kroll had failed to follow her orders with regard to administering oxygen to the patient. (R. 53-5, Exhibit 15, Osborn dep, p. 35, ID#531). Ms. Kroll denies this accusation. No incident report was ever filed with regard to the alleged insubordination of Ms. Kroll, and no discipline was ever issued to Ms. Kroll regarding this incident. (R. 53-5, Exhibit 15, Osborn dep, p. 35-36, ID#531). According to Ms. Osborn, when Ms. Kroll refused to provide the patient with oxygen upon her request, Ms. Osborn did it herself. (*Id.,* p. 35).

10

Ms. Kroll approached Mr. Binns later that day. During the meeting, Mr. Binns told Ms. Kroll that if she did not agree to get counseling then she could no longer work for WLAA, and that she was required to meet with Mr. Binns when she completed the mandated counseling. (R. 53-3, Exhibit 13, Holmstrom dep, p. 10-11, ID#515).

According to Mr. Binns, the decision to compel medical treatment was not based on Ms. Kroll's performance but because "her life was a mess and we could help her." (R. 52-4, Exhibit 9, Binns dep, p. 66, ID#488). "I never had a problem with her as far as patient care." (*Id.*) Mr. Binns told Ms. Kroll that she needed counseling "because of immoral personal behavior" and brought up assertions that she was "picking men up from the bar." (R. 53-4, Exhibit 14, Kroll dep, p. 174-175, ID#523-524). At that point, Ms. Kroll put her pager and keys on Mr. Binns's desk and left the building. Ms. Kroll was not scheduled for any shifts following this incident.

## G.     EEOC Charges.

On May 30, 2008, plaintiff filed a sex-discrimination complaint with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC"). (R. 51-4, Exhibit 4, ID#441). On February 23, 2009, plaintiff filed a charge with the EEOC, asserting that defendant violated the ADA by making her agree to receive psychological counseling and treatment as a

11

condition of her employment.   On July 28, 2009, the EEOC issued plaintiff a right to sue letter relating to her complaints of sex discrimination under Title VII. (R. 51-5, Exhibit 5, ID#443).   On June 22, 2009, the EEOC issued plaintiff a right to sue letter relating to her complaints of discrimination under the ADA.   (R. 52, Exhibit 6, ID#446-447).

## H.    The Proceedings in the Trial Court.

The plaintiff's complaint was filed on July 9, 2009.   Following the close of discovery, defendant WLAA filed a motion for summary judgment, asserting that it met the test for showing "business necessity" and that the treatment it compelled the plaintiff to undergo was related to her job.   (R. 50, p. 10-13).   Although defendant included one paragraph in its brief asserting that the forced psychological treatment was not a medical examination, defendant did not cite any statute, case law, or record evidence as support for this assertion.   (*Id.,* p. 10).   The court granted the defendant's motion, but not on the grounds sought by WLAA.   The court found that it "need not determine whether WLAA had a reasonable basis to justify its demand that Kroll attending counseling because, contrary to Kroll's claim, counseling alone does not constitute a medical examination under the ADA." (Opinion, R. 57, p. 6, ID#669).

Kroll filed an appeal from the summary judgment order and this court reversed. The court's opinion stated: "[W]e conclude that Kroll has presented sufficient

12

evidence such that a reasonable jury could conclude that the 'psychological counseling' Kroll was instructed to attend did constitute a 'medical examination' under the ADA." *Kroll v. White Lake Ambulance Authority*, 691 F.3d 809, 820 (6th Cir. 2012). This court vacated the judgment of the district court granting summary judgment to WLAA and remanded the case to the district court for proceedings consistent with its opinion. *Id.*[1]

Following the remand, WLAA filed a renewed summary judgment motion, relying upon its previously filed motion for summary judgment and brief in support. Following the filing of supplemental briefs by both parties, the district court granted WLAA's renewed motion. This appeal followed.

## III.

## **ARGUMENT**

### A.   **Standard of Review.**

Plaintiff appeals from the trial court's order granting the defendant's renewed motion for summary judgment. Summary judgment orders are reviewed de novo. *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 551, 552 (6th Cir. 2003). In deciding a motion for summary judgment, the Court should determine

---

[1] Judge Sutton filed a dissenting opinion. He did not agree with the majority on the issue of whether a requirement to obtain psychological counseling constitutes a mandated medical examination. *Id.*

whether there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986). The facts are to be considered in a light most favorable to the non-moving party, and "... all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod. Inc.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986)) (other citations omitted).

It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

14

**B.  The Trial Court Erred in Granting WLAA's Motion for Summary Judgment Because there Was No Significant Evidence that Could Cause a Reasonable Person to Inquire as to Whether Kroll Was Incapable of Performing Her Job.**

**1.  The Employer Has the Burden of Proving that a Medical Examination was Both "Job Related" and "Consistent With Business Necessity."**

The ADA prohibits employers from demanding that employees undergo medical examinations unless such examinations are shown to be "job related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A). The statute states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job related and consistent with business necessity.

The regulations promulgated under the ADA confirm those two requirements. *See* 29 C.F.R. §1630.14. Subsection (B) of this portion of the ADA provides that employers may "conduct voluntary medical examinations" "which are part of an employee health program available to employees at that work site." 42 U.S.C. § 12112(d)(4)(B). But involuntary examinations are restricted to circumstances where the medical condition at issue is shown to be both "job related" and "consistent with business necessity." 42 U.S.C. §12112(d)(4)(A).

As recognized by the district court, the employer has the burden of showing that its inquiry is job related and consistent with business necessity. (Opinion, R. 78,

15

p . 7, ID#812), citing *Fredenburg v. Contra Costa County Dept. of Health Services*, 172 F.3d 1176, 1182 (9th Cir. 1999). Thus, a prohibited medical inquiry or unlawful medical examination claim, unlike a general employment discrimination claim, does not implicate the familiar *McDonnell-Douglas* analysis requiring proof of a prima facie case and rebuttal of legitimate nondiscriminatory reasons for discharge. *See, Gonzalez v. Sandoval County*, 2 F. Supp. 2d 1442, 1445 (D. N.M. 1998). "The ADA provision on prohibited inquiries stands alone so that a prohibited inquiry in and of itself may be a violation." *Id.* (citing  42 U.S.C. § 12112(d)(4)(A); 42 U.S.C. § 12117(a) (making Title VII remedies available for violation of "any provision" of the ADA); 29 C.F.R. § 1630.13; 29 C.F.R. Pt. 1630, App. § 1630.13; *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d at 1229 (10th Cir. 1997); *Doe v. Kohn Nast & Graf*, 866 F. Supp. 190, 197 (E.D. Pa.1994).

### 2. To Prove that a Medical Exam is Job Related and Consistent with Business Necessity, an Employer Must Bring Forth Significant Evidence of Performance Deficiencies.

The business necessity standard "is quite high and is not to be confused with mere expediency." *Cripe v. City of San Jose*, 261 F. 3d 877, 890 (9th Cir. 2001). "To prove business necessity, the employer must show that: (1) the asserted business necessity is vital to the business; (2) the examination or inquiry genuinely serves the asserted business necessity; and (3) the request is no broader or more intrusive than

16

necessary." *Borgus v. SmithKline Beecham Corp.*, No. 02-CV-6472; 2004 WL 2095534 (W.D. N.Y. September 20, 2004) (citing *Conroy v. New York State Dep't. of Correctional Services*, 333 F.3d 88, 97-98 (2d Cir. 2003)).

There must also be "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 811 (6th Cir. 1999). "An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can 'perform job-related functions.'" *Id.* The examination or inquiry "must, at minimum, be limited to an evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness for the work at issue." *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 515 (3d Cir. 2001).

### 3. The Inquiry is Fact Intensive and Generally Inappropriate to Resolve by a Summary Judgment Motion.

"[W]hether an inquiry is job related and consistent with business necessity is a fact-intensive inquiry." *Gonzalez v. Sandoval County*, 2 F.Supp. 2d 1442, 1444 (D. N.M. 1998). In Gonzalez, a case involving a deputy sheriff who was terminated in connection with a prohibited inquiry about a potential disability, the court denied the employer's summary judgment motion, stating:

17

A reasonable jury could have found, viewing this evidence in a light most favorable to the plaintiff, that any post-employment disability related inquiry was unnecessary because plaintiff was having no difficulty effectively performing the essential functions of his position.

*Id.* at 1445.

Under the applicable regulations, "[t]he determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies upon the most current medical knowledge and/or the best available objective evidence." 29 C.F.R. §1630.2(r). Determination of the propriety of an asserted business necessity is best reserved for trial. *Transp. Workers, Local 110 v. New York City Transp. Auth.*, 2004 WL 830289 at *1, n.10 (S.D.N.Y. April 13, 2004).

> **4.      The District Court Erred by Ignoring the Absence of Performance Deficiencies and By Using Disputed Facts to Support a Conclusion that Should Have Been Reserved for the Jury.**

In this case, the district court usurped the role of the jury by relying on the employer's version of disputed facts and failed to consider the plaintiff's spotless work record when ruling on WLAA's summary judgment motion. The district court found that "The evidence in this case shows that Binns's requirement that Kroll obtain psychological counseling was both job-related and consistent with WLAA's

business necessity." (Opinion, R. 78, p. 7, Page ID#812). The district court relied upon "the concerns WLAA employees expressed to Dressen and Binns about Kroll's emotional health and its impact on Kroll's work performance" to justify this conclusion. (*Id.*, p. 7-8, Page ID#812-813). The district court found that "Binns had ample evidence that Kroll's emotional issues were compromising her ability to perform her job duties in a competent and safe manner." (*Id.*, p. 8, Page ID#813). To support this conclusion, the court relied upon "reports that Kroll was on her cell phone crying and arguing with Easton while driving a patient to the hospital" and that she was texting while driving. (*Id*).

A review of the record shows that the district court improperly drew inferences from the record in favor of WLAA's position on these and other points. For example, there is nothing in the record to suggest that Binns was told that Kroll was texting during an ambulance run. The court cites to testimony of Mark Terpstra, a co-employee, who testified that he had assumed that Kroll was texting Easton during an ambulance run. (Opinion, p. 8, n. 2, Page ID#813, citing R. 54-2, Exhibit 17, Terpstra dep, p. 41, Page ID#541). But Terpstra could not recall if he ever told Binns of the texting or any other concerns regarding Kroll. (R. 54-2, Exhibit 17, p. 39-40, ID#541).     There is no evidence in the record that Binns knew of any texting issues with Kroll. Binns did not testify about any texting incidents with Kroll. Binns

19

testified that he could only recall "one complaint about a use of a cell phone while [he] was still employed [at WLAA]." . (R. 52-4, Exhibit 9, Binns dep., p. 53, Page ID#484). Osborn testified that she told Binns that Kroll had texted someone during an ambulance run, but Binns did not recall that and never issued any discipline to Kroll about texting or about talking on a cell phone while driving. (*Id.*, p. 53-54, Page ID# 484-485). Therefore, the court drew adverse inferences against Kroll and made assumptions when it stated: "because texting while driving is dangerous under any condition, Binns could have reasonably concluded that Kroll's emotional issues prompted her texting while driving and, thus, impaired her judgment and caused her to ignore the safety and well being of others." (Opinion, R. 78, p. 8, Page ID#813).

The court also drew adverse inferences from the record when it stated: "Binns was rightly concerned about reports that Kroll was on her cell phone crying and arguing with Easton while driving a patient to the hospital, not simply because her conduct violated WLAA policy, but because it was unsafe and reflected a lack of good judgment and concern for the safety of patients, Kroll's coworkers, other drivers and Kroll herself." (Opinion, R. 78, p. 8, ID#813).

Binns testified that there was only one complaint that he heard about Kroll talking on her cell phone while driving. (R. 52-4, Exhibit 9, Binns dep, p. 65-68, ID#487-488). The complaint was that she "was screaming at an acquaintance of

20

[hers] while [she] [was] driving." (*Id.*, p. 61, ID#486). The incident occurred about a week before Kroll was given the medical examination ultimatum. (*Id.*). Binns did not recall who Kroll was driving with that day or whether she was screaming at Easton. (*Id.*, p. 61-62, ID#486-487). He did not give Kroll a written or verbal warning about this incident. (*Id.*, p 53, ID#484, p. 64-65, ID#487).

In light of this testimony, a reasonable jury could conclude a forced medical examination was unwarranted because this single incident did not show that Kroll was "no longer capable of doing her job." A reasonable jury could also conclude that a verbal or written warning would have been the appropriate remedy instead of a forced medical examination.    WLAA had work rules and a progressive discipline policy in place to address such issues.

In addition, the court did not consider whether Binns's motive for demanding a psychological examination was related to the plaintiff's job performance. Binns testified that his concerns about Kroll first arose when he learned "that - - there were problems with her being involved, dating, or having sexual relationships with men." (R. 52-4, Exhibit 9, Binns dep, p. 67-68, ID#488). Binns's request followed a pattern or practice of demanding counseling for those employees who he thought were having sexual relations outside of marriage. (R. 52-4, Exhibit 9, Binns dep, p. 41-42, ID#482-483). (R. 54, Exhibit 16, Sturgis dep, p. 13-14, ID#536-537). The district

21

court seems to have acknowledged that "it may be arguable that incidents that occurred outside of the workplace reflecting Kroll's emotional instability had no bearing on whether Kroll was capable of performing her essential job functions..." (Opinion, R. 78, p. 8, ID#813). But the court did not consider whether Binns's motive for compelling Kroll to undergo counseling was based on sexual stereotypes or Binns's personal opinion that employees who engaged in extra marital affairs or who were promiscuous required such counseling. A reasonable jury could conclude that a mandated medical exam ordered for those reasons was neither job related nor a business necessity.

The district court cites to the *Sullivan* decision for the proposition that an employer is justified in ordering a mental health examination "when aberrant behavior ... affects an employee's job performance." (Opinion, R. 78, p. 9, ID#813-814), citing *Sullivan v. River Valley School Dist.*, 197 F.3d at 812. (Ellipsis in original). But a review of the full quote from this court's opinion shows that the standard is higher than the one used by the district court. This court's opinion in Sullivan states:

> As the district court held, **health problems that significantly affect an employee's performance of essential job functions justify ordering a physical examination** "even if the examination might disclose whether the employee is disabled or the extent of any disability." (Dist. Ct. Op. at 15, quoting *Yin v. State of California*, 95 F.3d 864, 868 (9th Cir.1996)). **The same is true for ordering a mental examination when aberrant behavior similarly affects an employee's job performance.**

22

*Id.*, at p. 812. (emphasis added).

This court also held that the key issue is whether there is "significant evidence" questioning whether the employee is "still capable of performing his job." The opinion states:

> Post-hiring demands for examinations can only be made where shown to be "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Thus, for an employer's request for an exam to be upheld, there must be **significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job.** An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can "perform job-related functions." 42 U.S.C. § 12112(d)(4)(B).

*Id.*, p. 811. (emphasis added).

The facts in *Sullivan* are also quite different from the facts in this case. In Sullivan, the plaintiff was a teacher. His behavior included disruptive and abusive verbal outbursts at a school board meeting, he shoved papers in the faces of individual members of the board, and refused to stop when asked by the board president. Mr. Sullivan also disclosed confidential information about one of his student's grades to a local newspaper. He used inappropriate language critical of a faculty sponsor and failed to report for a meeting with the superintendent to discuss these incidents. *Id.*, p. 809. He later threatened school board members. *Id.*, p. 809.

23

The school board's response was to contact a psychologist for an informal review of Mr. Sullivan's behavior to see whether a psychological exam was in order. The psychologist "suggested Sullivan had a possible psychiatric disorder for which a more formal psychological assessment should be considered." *Id.* Sullivan was terminated when he refused to engage in the assessment.

In this case by contrast, there was no informal opinion sought from a mental health professional before the mandated mental examination, and no threatening behavior that was affecting the plaintiff's job performance. The district court's opinion states that "Binns relied on first-hand employee accounts of Kroll's behavior reflecting her mental condition" and that "this evidence consistently showed the Kroll's emotional state was fragile, as she was prone to crying spells, had emotional outbursts at work, and had engaged in conduct that jeopardized the safety of others." (Opinion, R. 78, p. 10, ID#815).

But there was no support for the court's conclusion that Binns was aware of the evidence relied upon the district court. The statements from the co-employees were solicited after the termination and in response to Kroll's EEOC charge. (R. 52-4, Exhibit 9, Binns dep., p. 69, ID#488). Binns told Kroll that the counseling was because of her "immoral personal behavior." (R. 53-4, Exhibit 14, Kroll dep., p. 174-175, ID#523-524). Binns stated that "our thoughts [were] that she was a good EMT

24

and her life was a mess" and that "I never had a problem with her as far as patient care." (R. 52-4, Exhibit 9, Binns dep, p. 66, ID#488).

It does appear that Binns was aware of the allegation that Kroll refused to give oxygen to patient. But that incident should be placed in context. Kroll was driving the ambulance with a female co-worker who had just called Kroll a whore who was only good for getting down on her knees. (R, 50, Exhibit F, Doc. 50-7, p. 12, Kroll dep, p. 167). It is not surprising the Kroll was upset and distraught by this statement and did not immediately respond to Osborne's demand that Kroll give oxygen to the patient. Osborne then administered the oxygen, so there was never any impact on the patient's care. (R. 53-5, Exhibit 15, Osborn dep, p. 35, ID#531).

In summary, there were substantial questions of fact over what Binns knew, why he demanded that Kroll receive counseling and whether it was reasonable for Binns to conclude (if he did) that there was "significant evidence" that Kroll had a psychological problem rendering her "[in]capable of performing [her] job."

## IV.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Emily Kroll respectfully requests this court to reverse the district's court's decision granting the defendant's summary judgment motion and to remand this case to the district court for a trial on the merits.

BOS & GLAZIER, P.L.C.
Attorneys for Appellant

Date: July 31, 2013                    By:___*/s/ Bradley K. Glazier*___
                                            Bradley K. Glazier (P35523)
                                            990 Monroe Avenue, N.W.
                                            Grand Rapids, MI 49503
                                            (616) 458-6814

26

## CERTIFICATE OF COMPLIANCE

Pursuant to the 6th Cir. R. 32(a)(7)(C), the undersigned certifies this Brief complies with the type-volume limitations of 6th Cir. R. 32(a)(7)(B).

1.    Exclusive of the exempted portions in 6th Cir. R. 32 (A)(7)(B)(iii), the Brief contains 5,998 words.

2.    The Brief has been prepared in proportionately spaced typeface using: Times New Roman 14.

3.    The undersigned understands a material misrepresentation in completing this Certificate, or circumvention of the  type-volume limits in 6th Cir. R. 32(a)(7), may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.


Dated: July 31, 2013.                  _/s/ Bradley K. Glazier_____
                                         Bradley K. Glazier
                                         Attorney for Appellant

27

**PROOF OF SERVICE**

     I hereby certify that on July 31, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

Date: July 31, 2013         By:   */s/ Bradley K. Glazier*
                                 Bradley K. Glazier (P35523)
                                 BOS & GLAZIER, P.L.C.
                                 990 Monroe Avenue, N.W.
                                 Grand Rapids, MI 49503
                                 Telephone: (616) 458-6814
                                 Facsimile: (616) 459-8614
                                 bglazier@bosglazier.com
                                 *Attorney for Plaintiff-Appellant*

.119233

# APPELLANT'S DESIGNATION OF RECORD
Case No.: 13-1774

| RECORD ENTRY NO. | DESCRIPTION | PAGE NO./ ID# Range |
|---|---|---|
| **50** | **Defendant's Brief in Support of Motion for Summary Disposition** | 1-16 |
| 50-7 | Exhibit F - Kroll Dep. Transcript | 1-18 |
| 50-16 | Exhibit 0 - Kroll email to Osborn | 1-2 |
| | | |
| **51** | **Plaintiff's Brief in Opposition to Defendant's Motion for Summary Disposition** | #380-404 |
| 51-1 | Exhibit 1 - WLAA Personnel Policies | #405-435 |
| 51-2 | Exhibit 2 -    Kroll Acknowledgment of Receipt of Personnel Policies | #436-437 |
| 51-3 | Exhibit 3 -    Letter of Commendation | #438-439 |
| 51-4 | Exhibit 4 -    MDCR/EEOC Complaint | #440-441 |
| 51-5 | Exhibit 5 -    EEOC Notice of Suit Rights | #442-443 |
| **52** | Exhibit 6 -    EEOC Right to Sue Letter | #444-447 |
| 52-4 | Exhibit 9 -    Binns Dep. Transcript | #478-489 |
| **53** | Exhibit 11 - Dresen Dep. Transcript | #495-505 |
| 53-3 | Exhibit 13 - Holmstrom Dep. Transcript | #512-516 |
| 53-4 | Exhibit 14 - Kroll Dep. Transcript | #517-525 |
| 53-5 | Exhibit 15 - Osborn Dep. Transcript | #526-532 |
| **54** | Exhibit 16 - Sturgis Dep. Transcript | #533-538 |
| 54-2 | Exhibit 17 - Terpstra Dep. Transcript | #539-542 |

29

| | | |
|---|---|---|
| **57** | **Opinion - 08/19/10** | #664-672 |
| 78 | **Opinion - 5/22/13** | #806-817 |
| 79 | **Order Granting Defendant's Renewed Motion for Summary Judgment - 5/22/13** | #818 |
| 80 | **Notice of Appeal - 6/4/13** | #819 |