CASE NO. 13-1774

IN THE
# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EMILY KROLL
*Plaintiff-Appellant*

v.

WHITE LAKE AMBULANCE AUTHORITY
*Defendant-Appellee,*

On Appeal from the United States District Court
for the Western District of Michigan
Southern Division

REPLY BRIEF OF APPELLANT

Oral Argument Requested

Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503-1423
(616) 458-6814
*Counsel for Appellant*

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES ...................................... ii-iii

I.  INTRODUCTION ............................................. 1

II. ARGUMENT ................................................ 1

A.  Brian Binns, the Director of WLAA, was the Person
    who Required Emily Kroll to Undergo a Medical
    Examination and What he Knew and Why he Ordered the
    Examination Show that WLAA Violated the ADA .............. 1

    1.  An Objectively Reasonable Basis for Ordering a
        Medical Examination Must be Based on the Information
        Known At the Time the Examination is Ordered ........... 2

    2.  Binns's Personal Motivation is Relevant to
        Whether the Medical Examination Demand was
        Based on Whether Kroll Could Perform
        Job-Related Functions ............................... 4

    3.  Proof of a Direct Threat Requires Proof of
        a Reliable Medical Judgment Supporting
        The Alleged Threat .................................. 6

    4.  The EEOC Guidance Shows that a Medical
        Examination Can Only be Ordered Based on
        Reliable Medical Judgment Showing a Direct Threat
        Or Reliable Information Showing a Significant
        Affect on Job Performance ........................... 8

B.  An Employee's Job Performance is Paramount in
    Evaluating the Necessity of a Mandated Medical Examination  ... 12

III. CONCLUSION AND RELIEF SOUGHT ......................... 19

## TABLE OF CASES, CITATIONS, AND AUTHORITIES

Page

Cases

*Bazzi v. City of Dearborn,*
658 F.3d 598 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cody v. CIGNA Healthcare of St. Louis, Inc.,*
139 F.3d 595 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Coffman v. Indianapolis Fire Dep't.,*
578 F.3d 559 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Denman v. Davey Tree Expert Co.,*
266 F. App'x. 377 (6th Cir. 2007)
2007 WL 4561504 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 18

*Fritsch v. City of Chula Vista,*
187 F.R.D. 614 (S.D. Ca. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gonzales v. Sandoval Cnty.,*
2 F. Supp.2d 1442 (D.N.M. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris v. Fork Life Systems, Inc.,*
510 U.S. 17; 114 S. Ct. 367; 126 L. Ed.2d 295 (1993) . . . . . . . . . . . . . . . . 6

*Jackson v. Lake County,*
No. 01 C 6528; 2003 WL 22127743 (N.D. Ill. Sept. 13, 2003) . . . . . . . . . 18

*Kroll v. White Lake Ambulance Auth.,*
691 F.3d 809 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lanman v. Johnson Cnty., Kansas,*
393 F.3d 1151 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mickens v. Polk County School Board,*
 430 F. Supp.2d 1265 (M.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Miller v. Champaign Cmty. Unit Sch. Dist.,*
 983 F. Supp. 1201 (C.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Owusu-Ansah v. Coca-Cola Co.,*
 715 F.3d 1306 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Roberts v. Rayonier, Inc.,*
 326 F. Supp.2d 1323 (M.D. Fla. 2004), *affirmed in part,*
 *vacated in part,* 135 Fed. Appx. 351, No. 04-14031,
 2005 WL 1412066 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sullivan v. River Valley School Dist.,*
 197 F.3d 804 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Thomas v. Corwin,*
 483 F.3d 527 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Watson v. City of Miami Beach,*
 177 F.3d 932 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

## Statutes and Regulations

29 C.F.R. § 1630.2(r) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 U.S.C. § 12112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

## Other

EEOC Enforcement Guidance: Disability Related Inquiries and
Medical Examinations of Employees Under the Americans
With Disabilities Act, No. 915.002 (July 27, 2000)
*available at* www.eeoc.gov/policy/docs/guidance-inquiries.html . . . . . . . . *passim*

# I.    INTRODUCTION

If the decision-maker for the employer requires an employee to undergo a medical examination for his own personal reasons, can the employer justify the decision based on information that was unknown or not considered by the decision-maker?  And if the motive of the decision-maker is in dispute, does that create a jury question over the issue of whether the decision to compel a medical examination was both "job related" and "consistent with business necessity?"  For the reasons that follow, the answers to these questions compel this Court to reverse the District Court's decision granting the Defendant's summary judgment motion.

# II.    ARGUMENT

## A.    Brian Binns, the Director of WLAA, was the Person who Required Emily Kroll to Undergo a Medical Examination and What he Knew and Why he Ordered the Examination Show that WLAA Violated the ADA.

As noted by the District Court, the decision to require Emily Kroll to undergo a psychological examination was made by Brian Binns. (Opinion, R. 78, p. 7, 8, Page ID#812, 813).  Binns was the Director of WLAA and the person in charge of the Authority. (R. 53, Exhibit 11, p. 11, ID#498).  The District Court noted that it was "Binns's requirement" that Kroll obtain counseling and that "Binns had ample evidence that Kroll's emotional issues were compromising her ability to perform her

1

job duties." *Id.* Jean Dresen, the office manager at WLAA, never told the Plaintiff that she was required to undergo counseling. (R. 53-3, Exhibit 13, p. 10-11, ID#515). Ms. Dresen testified that she "didn't have the authority to tell her that she had to go and her job depended on it." (R. 53-1, Exhibit 11, p. 42, ID#502). Ms. Dresen asserted that it was Mr. Binns who had that authority and that she was simply present when Binns told the Plaintiff that "she needs to get some counseling." (*Id.* p. 43, ID#502).

WLAA's brief relies upon the testimony of Kroll's co-workers and Dresen to argue that Kroll was mentally unstable. (Appellee's brief, p. 8-11). Defendant contends that Binns's knowledge is not relevant because the business necessity and job-relatedness tests are objective. (*Id.*, p. 47-50). But the subjective belief of the decision-maker does matter. And the issue is important because Binns's testimony would allow a reasonable jury to conclude that he acted for reasons totally unrelated to Kroll's job performance or out of concern for her competency or safety.

> **1.    An Objectively Reasonable Basis for Ordering a Medical Examination Must be Based on the Information Known At the Time the Examination is Ordered.**

To determine whether the employer had an objectively reasonable basis for requesting a medical examination, a court must examine the facts that were available

2

to the employer at the time the decision was made. *See*, *Fritsch v. City of Chula Vista*, 187 F.R.D. 614 (S.D. Ca. 1999). In *Fritsch*, an ADA medical examination case, the court stated: "Defendant Kaheny's decision to require plaintiff to undergo a psychiatric examination must be justified as objectively reasonable *based upon what Kaheny knew at the time he made the decision*. His decision cannot be justified by medical and/or psychological information pertaining to the plaintiff which was learned by defendants after the fact." *Id*. at 632. (Emphasis in original).

In this case, the evidence relied upon by WLAA is predominantly evidence learned "after the fact." It was not until Kroll filed her EEOC charge that Binns began to marshal evidence to support his decision. He collected statements from co-workers in late June 2008, two months after the date that he ordered Kroll to undergo a psychological examination. (*See, e.g.,* R. 50-13, Exhibit L, p. 1-4). WLAA and the District Court may not rely upon after the fact evidence to support their conclusion that Binns's medical examination demand was objectively reasonable. The issue is what did Binns know when he made the decision and why did he make the decision. *See, Fritsch. See also*, EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)("EEOC Guidance"),Question No. 5, http://www.eeoc.gov/policy/docs/guidance-inquiries.html. A medical examination

3

"must be based on objective evidence obtained, or reasonably available to the employer, *prior to* making a disability-related inquiry or requiring a medical examination." *Id.* (Emphasis added).

### 2. Binns's Personal Motivation is Relevant to Whether the Medical Examination Demand was Based on Whether Kroll Could Perform Job-Related Functions.

WLAA also asserts that Binns's personal motivation is irrelevant. (Appellee's brief, p. 47). But this contention ignores the requirement that "there must be *genuine reason to doubt whether that employee can 'perform job-related functions.'"* *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 811 (6th Cir. 1999) (emphasis added). In this case, WLAA cannot show that it had such a "genuine reason" because Binns did not order the medical examination based on whether Kroll could perform her job-related functions.

In the *Sullivan* case this Court did state that there is no need to assess an employer's intent in ordering a fitness for duty examination. But it did so in rejecting the defendant employer's argument that a court should "uphold an employer's request for a medical examination whenever the employer has an honest belief rooted in particularized facts that an employee may not be able to perform the essential functions of his job." *Id.* As such, it is dicta, unnecessary to the Court's decision and

4

not relevant to the issue of what is means for an employer to base its decision on objective evidence.

Kroll agrees with WLAA that "Even if an employer subjectively believes that sending an employee to an examination is appropriate, if it is not objectively appropriate the employer cannot avoid liability." (Appellee's brief, p. 48). But the converse is not true. An employer - in this case Binns - cannot have an objectively reasonable basis for ordering a medical examination if his real reason for the order was his conclusion that Kroll needed counseling because she was promiscuous. *See*, Binns's dep, p 41. (R. 52-4, Exhibit 9, ID#482).

WLAA argues that non-ADA case law supports its position that Binns's motive or reasons for ordering the medical examination are not relevant. But the Defendant's citations to search and seizure cases are not persuasive. In *Bazzi v. City of Dearborn*, 658 F.3d 598, 604 (6th Cir. 2011), this Court did state that a traffic violation provides probable cause for an arrest even if an officer's "real purpose" for a traffic stop is to look for contraband. But the Court still found the officer's state of mind relevant because it reversed the defendant's conviction based on evidence that the officer may have lied about whether there was a traffic violation in the first place. *Id.* In any event, the legal standard in a criminal case has no application to this statutory employment claim.

5

Courts do require proof of both a subjective and objective basis for decisions in comparable employment cases. In *Harris v. Fork Lift Systems, Inc.*, 510 U.S. 17, 21-22; 114 S. Ct. 367, 370; 126 L. Ed. 2d 295 (1993), the Court concluded that the plaintiff must show both that she subjectively perceived an abusive and hostile environment and that a reasonable person would reach the same conclusion. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the  conditions of the victim's employment, and there is no Title VII violation."

In an ADA medical examination case, with the employer having the burden of proof to establish that the medical examination was both job related and consistent with business necessity, it is logical to extend the same requirement. An employer cannot carry that burden if it did not subjectively perceive that a medical examination was necessary for the reasons set forth in the statute.

> **3.     Proof of a Direct Threat Requires Proof of a
> Reliable Medical Judgment Supporting the
> Alleged Threat.**

As noted by this Court in a case cited by Defendant, *Denman v. Davey Tree*

6

*Expert Co.*, 266 F. App'x. 377 (6th Cir. 2007), for an employer to prove that a medical examination is job related and consistent with business necessity, excluding cases where an accommodation is requested by the employee, the employer must show either "the employee's ability to perform the essential functions of the job is impaired" or "the employee poses a direct threat to himself or others." (*Id.* at 379).

Defendant states that a medical examination may be ordered "if there was reason for WLAA to believe that Plaintiff posed a direct threat to herself or others." (Appellee's Brief, p. 29). But the *Denman* case confirms that "the determination that an individual poses a direct threat shall be based on reasonable medical judgment." (quoting 29 C.F.R. § 1630.2(r)). The Defendant does not argue that any medical judgment was used when Kroll was ordered to undergo an examination. No opinion from any medical care provider was solicited. And since the "determination" must be based on "reasonable medical judgment," the case law and regulations both reveal that individual intent is relevant. Stated differently, how can WLAA be said to have engaged in reasonable medical judgment in deciding that Kroll posed a direct threat to herself or others if Binns admits that his decision was based on Kroll's off-premises promiscuity?

7

### 4. The EEOC Guidance Shows that a Medical Examination Can Only be Ordered Based on Reliable Medical Judgment Showing a Direct Threat or Reliable Information Showing a Significant Affect on Job Performance.

Defendant claims that it is Kroll's position that an employer must have irrefutable proof before it can order a medical examination. (Appellee's Brief, p. 29-30). But Kroll has not and does not make that claim. An employer may demand a medical examination so long as it has reliable information showing that the employee's ability to perform the essential functions of her job has been impaired or reliable information supporting a reasonable medical judgment that the employee poses a direct threat.

As noted by Defendant, the EEOC Guidance on medical examinations do describe by example what it means to use reliable information. Appellee's brief refers to Question 6 of the Guidance. (*Id.,* 30-31). Example B to that question is instructive. It states as follows:

Example B: Kim works for a small computer consulting firm. When her mother died suddenly, she asked her employer for three weeks off, in addition to the five days that the company customarily provides in the event of the death of a parent or spouse, to deal with family matters. During her extended absence, a rumor circulated among some employees that Kim had been given additional time off to be treated for depression. Shortly after Kim's return to work, Dave, who works on the same team with Kim, approached his manager to say that he had heard that some workers were concerned about their safety. ***According to***

8

*Dave, people in the office claimed that Kim was talking to herself and threatening to harm them. Dave said that he had not observed the strange behavior himself but was not surprised to hear about it given Kim's alleged recent treatment for depression. Dave's manager sees Kim every day and never has observed this kind of behavior.* In addition, none of the co-workers to whom the manager spoke confirmed Dave's statements.

*In this case, the employer does not have a reasonable belief, based on objective evidence, that Kim's ability to perform essential functions will be impaired or that s/he will pose a direct threat because of a medical condition.* The employer, therefore, would not be justified in asking Kim disability-related questions or requiring her to submit to a medical examination because the information provided by Dave is not reliable.

See, EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), Q. 5, http://www.eeoc.gov/policy/docs/guidance-inquiries.html. (Emphasis added).

In this case, Binns is in a very similar position to "Dave's Manager." He observed Kroll frequently and did not personally observe any of the erratic behavior mostly referenced in after the fact statements collected to support WLAA's defense of Kroll's EEOC charge. The "evidence" supporting Kroll's alleged need for psychological counseling is similar to, but less troubling than the assertions that "Kim" was talking to herself and threatening to harm her co-workers.

Many of the assertions about Kroll refer to off-work conduct and suppositions about Kroll's mental state from persons with no basis to make a medical judgment. In the *Sullivan* case, by contrast, the employer consulted with a medical professional

9

before ordering the examination.  197 F.3d at 812.

The EEOC Guidance states that reliable information from another person may be used to support a mandated medical examination premised on an employee's inability to perform her job.  The examples show that rumor or innuendo and opinions about medical issues by non-professionals are not reliable information.

Question 5 of the EEOC Guidance asks, "When may a disability-related inquiry or medical examination of an employee be 'job-related and consistent with business necessity?'"  The EEOC Guidance confirms that a medical examination "must be based on objective evidence obtained, or reasonably available to the employer, *prior to* making a disability-related inquiry or requiring a medical examination. Such a belief requires an assessment of the employee and his/her position and *cannot be based on general assumptions*." *Id.* (emphasis added).  The EEOC Guidance then provides this example.

> Example C: Six months ago, a supervisor heard a secretary tell her co-worker that she discovered a lump in her breast and is afraid that she may have breast cancer. Since that conversation, the secretary still comes to work every day and performs her duties in her normal efficient manner.

> In this case, the employer does not have a reasonable belief, based on objective evidence, either that the secretary's ability to perform her essential job functions will be impaired by a medical condition or that she will pose a direct threat due to a medical condition. The employer, therefore, may not make any disability-related inquiries or require the employee to submit to a medical examination.

10

http://www.eeoc.gov/policy/docs/guidance-inquiries.html.

The EEOC Guidance shows, contrary to the Defendant's position, that the employee's performance of job duties is paramount in determining whether an employer may mandate a medical examination. The decision-maker in this case, Brian Binns, never questioned Kroll's ability to perform her job and thought that Kroll was a very good EMT at the time he ordered the medical examination. The testimony of Kroll's co-workers does not detract from Binns's beliefs.

Mark Terpstra's testimony that Kroll would "on occasion talk to and argue with [her boyfriend and co-worker] Easton on her cell phone" does not show that Binns was either aware of this or considered this when ordering the medical examination Binns could not recall an ambulance call when Ms. Kroll was not doing her job properly. (R. 52-4, Exhibit 9, p. 56, ID#485). Nor is there any evidence that Binns knew of any texting while driving incidents. But more importantly, if these incidents did occur, they do not support the conclusion that Kroll was suffering from a mental illness that could be addressed through counseling. The appropriate response would have been to discipline Kroll for violating the cell phone policy, starting with an oral or written warning, as outlined in the WLAA's personnel policies. (*See*, R. 51-1, Exhibit 1, p. 5-7, ID#414-416). No such warning was ever issued to Kroll.

11

### B.   An Employee's Job Performance Is Paramount in Evaluating the Necessity of a Mandated Medical Examination.

Knowing that Binns and others have no criticism of the manner in which Kroll performed her job duties (with the exception of isolated incidents where she allegedly used her phone while driving), WLAA asserts that "the presence or absence of a disciplinary history is simply not relevant to a determination of job relatedness or business necessity." (Appellee's Brief, p. 30). This assertion ignores this Court's statement in *Sullivan* that "there must be genuine reason to doubt whether that employee can perform job-related functions." 197 F.3d at 811.   Performance evaluations and the absence of discipline are well recognized barometers of whether an employee can perform her job functions. In this case, Kroll received positive evaluations of her performance and accolades about the job she was doing as an EMT basic. She was never disciplined.

Defendant cites to cases where employers were found to have properly requested fitness for duty examinations or medical examinations, but those cases are all different and distinguishable from the facts in this case. In *Watson v. City of Miami Beach*, 177 F.3d 932, 934 (11th Cir. 1999), the court addressed an ADA claim filed by a police officer with the City of Miami Beach. Unlike the WLAA, the city had conducted an investigation before requiring Watson to take a fitness for duty

12

examination. The "investigation revealed 10 Internal Affairs' investigations of complaints by and against Watson, as well as 11 incidents from 1992 to 1995 including a disciplinary action and various grievances by Watson against the Police Department." *Id*. at 934. The final incident prompting the required fitness for duty examination occurred in connection with a mandatory, department-wide tuberculosis testing program for the Police Department due to police contact with high risk individuals. Watson refused the testing and a nurse manager found his behavior to be rude and unreasonable. The nurse informed Watson's superior of Watson's behavior and suggested a fitness for duty examination. *Id*. Watson agreed to the examination and was returned to work shortly after the examination was completed.

The facts in *Watson* do not compare to the facts of this case. There was no disciplinary action or investigations into complaints by or against Kroll. And there was no medical provider who proposed that Kroll could benefit from a medical examination. Finally, a police officer position is decidedly different from an EMT-basic position. Kroll was not furnished a fire arm and was not called upon to intervene in or to investigate crimes.

*Cody v. CIGNA Healthcare of St. Louis, Inc*., 139 F.3d 595 (8th Cir. 1998) is not a medical examination case. The issue was whether the plaintiff was a person with a disability and the court found that she was not. Of relevance to the quotation

13

about employers needing to be able to use reasonable means to ascertain the cause of troubling behavior, the plaintiff in the *Cody* case was observed sprinkling salt in front of her cubicle to keep away evil spirits, staring off into space for an hour at a time, drawing pictures of sperm, and talking about a gun." *Id*. at 597. The plaintiff had also mentioned her continuing anxiety and visits to a psychotherapist. *Id*. at 596. Those facts are not present in this case.

In *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1307 (11th Cir. 2013), on the recommendation of an independent psychologist, Coca-Cola placed one of its employees on paid leave and required him to undergo a psychiatric/psychological fitness for duty evaluation. The independent psychologist was called in after the employee was observed becoming agitated during a performance review meeting, banging his hand on the table where they sat, and stating that someone was "going to pay for this." *Id*. at 1309. The psychologist expressed concern to Coca-Cola over the emotional and psychological stability of the employee noting that there was a strong possibility that he was delusional. *Id*. Those facts, particularly the consult with a trained medical professional, are simply not present in this case.

*Lanman v. Johnson Cnty., Kansas*, 393 F.3d 1151, 1157 (10th Cir. 2004), was also not a medical examination case. The court cited to 42 U.S.C. § 12112(d)(4)(A), but the plaintiff only alleged disability discrimination. *Lanman* was also a law

14

enforcement case and is distinguishable on that basis as well.

*Thomas v. Corwin*, 483 F.3d 527 (8th Cir. 2007), is another law enforcement fitness for duty case. Unlike the facts in this case, the plaintiff had sought treatment with a primary care physician and a psychologist regarding work-related stress, had required a three week absence for the stress and had refused to identify the cause of the stress. Once again, those facts are not present in this case.

In *Coffman v. Indianapolis Fire Dep't*., 578 F.3d 559, 565, 566 (7th Cir. 2009), the department's decision to refer Coffman for a fitness for duty evaluation took place against the backdrop of two firefighter suicides in the preceding months. *Id*. at 565. There was no suggestion in that case that the decision was prompted by anything but concern for the plaintiff. When the Fire Chief ordered that the plaintiff be evaluated, he reported that although Coffman had initially been outgoing, she had become guarded to the extent that he believed there was a possibility that she was suffering from paranoia. *Id*. at 565.

Those facts do not compare to this case where Binns reported that Kroll was not sent to counseling because of any issues with performance but because she was having sex with married men. In fact, none of the cases cited by WLAA involved a medical examination that was ordered by a supervisor who had a history of ordering medical examinations of other employees who he thought were promiscuous. And

15

none of the cases involved a supervisor who had his own personal motive for ordering such an examination.

The facts of this case are much closer to *Gonzales v. Sandoval Cnty.*, 2 F. Supp. 2d 1442, 1445 (D.N.M. 1998). In that case, the plaintiff had a history of chronic fatigue syndrome and Epstein-Barr virus. The plaintiff alleged he was terminated from his position as a deputy in the Sandoval County Sheriff's Department in violation of the ADA, after he refused to undergo a medical examination. In denying the defendant's motion for judgment notwithstanding verdict, the court stated:

> Defendant also argues that the evidence compels a finding that the inquiry in this case was job related and consistent with business necessity. The evidence on this point, however, was sufficiently controverted. In Plaintiff's favor, he worked forty hours per week plus overtime, never took sick leave, and never asked for any accommodations. During his medical exam to enter service, his physician noted no evidence of impairment, and later cleared Plaintiff to attend the police academy. Moreover, Defendant stipulated that Plaintiff was able to perform the essential functions of his position. A reasonable jury could have found, viewing this evidence in the light most favorable to Plaintiff, that any post-employment disability-related inquiry was unnecessary because Plaintiff was having no difficulty effectively performing the essential functions of his position.

*Id.*

In this case, Kroll similarly did not take any time off or request an accommodation and the evidence is similarly mixed on whether the WLAA's inquiry into Kroll's alleged medical condition was job related and consistent with business

16

necessity. [1]

Finally, while not included as a heading or separate argument, Appellee's brief asserts that because Kroll never submitted to counseling, "Plaintiff cannot establish a genuine issue of material fact as to whether the counseling was related to her job." (Appellee's brief, p. 46). This argument was never presented to the trial court, but was argued in the previous appeal to this court. WLAA asserted that the District Court did not have standing based on her refusal to undergo mandated counseling. This court rejected the contention, stating: "Kroll has alleged an injury proximately caused by the violation of 42 U.S.C. § 12112(d): the termination of her employment." *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 814 (6th Cir. 2012). This holding is the law of the case.

In addition, the ADA, by its terms, does not require an employee to capitulate to an employer's request for a medical examination in order to challenge an adverse employment action based on her refusal. The ADA explicitly prohibits employers

---

[1] The other cases cited by WLAA are similarly unavailing. *Mickens v. Polk County School Board*, 430 F. Supp.2d 1265 (M.D. Fla. 2006), involved an assistant school principal's multiple confrontations with school officials, foul language directed at the plaintiff's supervisors, intemperate letters and threats. The common-sense holding in *Miller v. Champaign Cmty. Unit Sch. Dist.*, 983 F. Supp. 1201, 1207 (C.D. Ill. 1997), was "an elementary school district is properly protecting its students and staff, and is therefore acting in a manner consistent with business necessity, when it requires a psychiatric examination of an employee who has exhibited paranoid, agitated and schizophreniform behavior."

17

from making disability-related inquiries of employees, unless the inquiry is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). This provision applies to all employees.

Federal courts have exercised jurisdiction in cases brought by employees who were fired for refusing to abide by their employers' demands for medical examinations. In *Roberts v. Rayonier, Inc.*, 326 F. Supp. 2d 1323 (M.D. Fla. 2004), *affirmed in part, vacated in part*, 135 Fed. Appx. 351, No. 04-14031, 2005 WL 1412066 (11th Cir. 2005), the court exercised jurisdiction over a claim that an employee was fired for refusing to participate in an assessment examination. In *Jackson v. Lake County*, No. 01 C 6528, 2003 WL 22127743 (N.D. Ill. Sept. 13, 2003), the court exercised jurisdiction over a claim that an employee was fired for refusing to participate in a mental status examination. In *Denman v. Davey Tree Expert Co.*, 266 Fed. Appx. 377, 2007 WL 4561504 (6th Cir. 2007), this court exercised jurisdiction over a claim that a former employee was fired for refusing to abide by his employer's request for medical information and an independent medical examination. These cases indicate that a plaintiff need not participate in a forbidden medical examination in order to challenge the examination.

18

## III.

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, Emily Kroll respectfully requests this court to reverse the District's Court's decision granting the Defendant's summary judgment motion and she requests this court to remand this case to the District Court for a trial on the merits.

BOS & GLAZIER, P.L.C.
Attorneys for Appellant

Date: October 18, 2013                By:___*/s/ Bradley K. Glazier*_____
Bradley K. Glazier (P35523)
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

## CERTIFICATE OF COMPLIANCE

Pursuant to the 6th Cir. R. 32(a)(7)(C), the undersigned certifies this Brief complies with the type-volume limitations of 6th Cir. R. 32(a)(7)(B).

1.      Exclusive of the exempted portions in 6th Cir. R. 32 (A)(7)(B)(iii), the Brief contains 4,386 words.

2.      The Brief has been prepared in proportionately spaced typeface using: Times New Roman 14.

3.      The undersigned understands a material misrepresentation in completing this Certificate, or circumvention of the  type-volume limits in 6th Cir. R. 32(a)(7), may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.


Dated: October 18, 2013.          _/s/ Bradley K. Glazier_____
                                  Bradley K. Glazier
                                  Attorney for Appellant

## PROOF OF SERVICE

I hereby certify that on October 18, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

Date: October 18, 2013          By:___*/s/ Bradley K. Glazier*_____
                                         Bradley K. Glazier (P35523)
                                         BOS & GLAZIER, P.L.C.
                                         990 Monroe Avenue, N.W.
                                         Grand Rapids, MI  49503
                                         Telephone: (616) 458-6814
                                         Facsimile: (616) 459-8614
                                         bglazier@bosglazier.com
                                         *Attorney for Plaintiff-Appellant*

.119625